UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD NITTO, JAMES AYOTTE and
CHRISTINE AYOTTE,

     Plaintiffs,

  vs.

MATTHEW D. FAIRBROTHER and KATHY
FAIRBROTHER,

    Defendants.

DECISION AND ORDER

20-CV-6660-MJP

---

MATTHEW D. FAIRBROTHER and KATHY
FAIRBROTHER,

    Third-Party Plaintiffs,

  vs.

FARMERS INSURANCE EXCHANGE and
TRUCK INSURANCE EXCHANGE,

    Third-Party Defendants.

---

## INTRODUCTION

**Pedersen, M.J.**  Third-Party Plaintiffs Matthew D. Fairbrother and Kathy

Fairbrother (the "Fairbrothers") have sued Third-Party Defendants Farmers Truck

Insurance Exchange ("Farmers") and Truck Insurance Exchange ("Truck Insurance")

(collectively, "the Insurers") for declaratory relief. (Third-Party Compl., Nov. 24,

2020, ECF No. 11.) Specifically, the Fairbrothers seek a declaration that the Insurers

have a duty, pursuant to two insurance policies, to defend and indemnify the

Fairbrothers in an underlying action brought by purchasers of a property and house sold by the Fairbrothers, where the purchasers assert that the roof and cupola of the house had rot and water damage. That matter is pending in this Court and entitled *Nitto, et al. v. Fairbrother, et al.,* No. 20-CV-6660-MJP ("*Nitto* action").

The Insurers and the Fairbrothers have both moved for summary judgment. In their motion for summary judgment, the Insurers ask the Court to find, as a matter of law, that the claims underlying the *Nitto* action are not within the scope of the policies' coverage and, therefore, no duty to defend or indemnify exists. (Insurers' Notice of Mot., Jun. 29, 2022, ECF No. 50.) The Insurers also ask the Court to find, as a matter of law, that the Fairbrothers' estoppel claim (raised in their cross-motion for summary judgment discussed below) is meritless. (Insurers' Resp. Mem. of Law at 7–10, Sept. 9, 2022, ECF No. 60.)

In their cross-motion for summary judgment, the Fairbrothers seek summary judgment on their claim for a declaration that the Insurers are obligated to defend[1] them with respect to the *Nitto* action, an order denying the Insurers' motion for summary judgment, and dismissing the Insurers' affirmative defenses. (Notice of Mot. at 2, Sept. 8, 2022, ECF No. 55.) In addition, the Fairbrothers ask the Court to

---

[1] The Fairbrothers' third-party complaint contains one cause of action seeking an order declaring that the Insurers are obligated to defend them under both policies and that the Insurers are obligated to indemnify the Fairbrothers on a primary, non-contributory basis, up to the limits of both policies, for any damages in connection with the underlying action. (Third-Party Compl. at 6, ECF No. 11.) However, in their present motion, the Fairbrothers only seek summary judgment on their duty to defend claim. The Insurers, however, have moved for a declaration that they are not obligated to defend or indemnify the Fairbrothers. (Notice of Mot. at 1, ECF No. 50.)

find that the Insurers are estopped from disclaiming coverage under certain exclusions in the policies due to the Insurers' alleged violation of California's claims practices regulations. (Fairbrothers' Mem. of Law at 3, Sept. 8, 2022, ECF No. 55-10.)

For the reasons set forth below, the Court grants the Insurers' motion for summary judgment and denies the Fairbrothers' motion for summary judgment.

## BACKGROUND

The Fairbrothers sold property and a house built on that property to the plaintiffs in the *Nitto* action and the plaintiffs in the *Nitto* action allege that the Fairbrothers failed to disclose structural and environmental issues in connection with the house. (Insurers' Statement of Material Facts ("Insurers' SMF") ¶ 3, Jun. 28, 2022, ECF No. 49.) The Insurers are insurance companies that issued two casualty insurance policies to the Fairbrothers. (*Id*. at 14–15; Fairbrothers' Counter Statement of Material Facts ("Fairbrothers' Counter SMF") ¶¶ 14–15, Sept. 8, 2022, ECF No. 55-1.) The Fairbrothers seek a declaration that the Insurers are obligated to defend them in the *Nitto* action pursuant to the policies.

## I. *Nitto* Action.

The plaintiffs in the *Nitto* action, Richard Nitto, James Ayotte, and Christine Ayotte ("underlying Plaintiffs") initially filed that action on June 4, 2020, in New York State Supreme Court, Livingston County, under Index Number 00283-2020. (Insurers' SMF ¶ 1, ECF No. 49; Fairbrothers' Counter SMF ¶ 1, ECF No. 55-1; Fairbrother's Statement of Undisputed Facts ("Fairbrothers' SMF") ¶ 21, Sept. 7, 2022, ECF No. 55-2.) The Fairbrothers, the defendants in the *Nitto* action, timely

3

removed that action to the United States District Court for the Western District of New York. (Insurers' SMF ¶ 2, ECF No. 49; Fairbrothers' Counter SMF ¶ 2, ECF No. 55-1.) The Insurers assert that the *Nitto* action seeks monetary damages for breach of contract, breach of implied contract, fraud in the inducement, and negligent misrepresentation against the Fairbrothers based upon an alleged failure to disclose structural and environmental problems in the property located at 642 Sylvan Court in Caledonia, New York. (Insurers' SMF ¶ 3, ECF No. 49.) The Fairbrothers contend that the complaint in the *Nitto* action can also be read to allege possible claims for negligent construction and/or negligent maintenance. (Fairbrothers' Counter SMF ¶ 3, ECF No. 55-1.)

In 1982, the Fairbrothers undertook to build a home located at 642 Sylvan Court, Caledonia, New York. (Fairbrothers' SMF ¶ 2, ECF No. 55-2.).[2] After the foundation and walls of the structure were completed, Mr. Fairbrother assembled a geodesic dome that was to be used as the roof for the home from a kit that he had

---

[2] In response to paragraphs 2 through 15 of the Fairbrothers' counterstatement of facts (ECF No. 55-1), the Insurers provide the same response: Admitted that Matt Fairbrother authored a declaration indicating this fact, but deny that any evidence has (sic) produced to actually substantiate it. (Insurers' Resp. to Third Party Pls.' Statement of Material Facts in Supp. of Their Mot. for Summ. J. ("Insurers' Counter SMF") ¶¶ 2–15, Sept. 29, 2022, ECF No. 59.) However, the Insurers' contention that the Fairbrothers have failed to produce evidence to substantiate the facts in the aforementioned paragraphs is incorrect as the Fairbrothers have cited to the declaration of Matthew Fairbrother, which constitutes evidence in support of those facts. Indeed, "a declaration by an individual with personal knowledge is sufficient to support a motion for summary judgment . . . [as long as it is] 'made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant  is competent to testify on the matters stated.'" *Buehlman v. Ide Pontiac, Inc.*, 345 F. Supp. 3d 305, 312 (W.D.N.Y. 2018), (quoting Fed. R. Civ. P. 56(c)(4)).

4

purchased. (*Id.* ¶ 3.) After assembling the dome, Mr. Fairbrother, together with his father-in-law, installed the dome on the house. (*Id.* ¶ 4.) In addition to the dome, Mr. Fairbrother constructed a cupola on top of the dome. ((*Id.* ¶ 5.) The purpose of the dome was to allow light to enter the house and ventilate moist air out of the house from the top of the dome. ((*Id.* ¶ 6.) Construction of the house was completed, and on October 22, 1983, the Town of Caledonia issued a Certificate of Occupancy ("COO"). (*Id.* ¶ 7.)

In 2010, the Fairbrothers contracted with Tri County Contractors to: tear off the existing roofing on the cupola; replace the existing plywood; install an ice/water barrier; and complete the roof deck and re-shingle with 30-year architectural shingles. (*Id.* ¶ 8.) In June of 2012, the Fairbrothers contracted with Habitat Management General Contracting to perform the following: tear off the existing roofing materials on the dome, including the underlayment; install an ice/water membrane across the entire roof deck; and repair plywood & flashing as needed, which was charged separately. (*Id.* ¶ 9.)

Four years after having the dome re-roofed, the Fairbrothers put their Caledonia home up for sale. (*Id.* ¶ 11.) On February 17, 2017, the underlying Plaintiffs and the Fairbrothers entered into a Purchase of Sale Contract. (Insurers' SMF ¶ 4, ECF No. 49; Fairbrothers' Counter SMF ¶ 4, ECF No. 55-1; Fairbrothers' SMF ¶ 12 ECF No. 55-2.) The contract contained a contingency requiring the house to pass an inspection to be performed by an inspector of the purchasers' choosing. (Fairbrothers' SMF ¶ 13, ECF No. 55-2.) The Fairbrothers allege that, upon

information and belief, the source of which is the report provided by the underlying Plaintiffs, Gold Shield Pro Services completed an inspection of the home prior to the closing, which was accepted by the purchasers. (*Id.* ¶ 14.) The Fairbrothers closed on the sale of the home in May of 2017. (*Id.* ¶ 15.)

The underlying complaint alleges that the Fairbrothers failed to adequately maintain and ventilate the roof and failed to take care in the construction and maintenance of the house. (Insurers' SMF ¶ 5, ECF No. 49; Fairbrothers' Counter SMF ¶ 5, ECF No. 55-1.) However, while the Insurers further contend that the underlying complaint alleges that the Fairbrothers "experienced problems over time with moisture and water buildup in the walls," the Fairbrothers assert that the paragraphs referred to by the Insurers in support of that statement do not support it. (Fairbrothers' Counter SMF ¶ 5, ECF No. 55-1.) The underlying Plaintiffs further allege that despite being told by a roofing contractor, the Fairbrothers failed to fix the deteriorated roof, and instead directed the contractor to cover the deteriorated and rotted plywood with new plywood and shingles. (Insurers' SMF ¶ 6, ECF No. 49; Fairbrothers' Counter SMF ¶ 6, ECF No. 55-1.)

On June 1, 2016, the Fairbrothers executed a property condition disclosure statement. (Insurers' SMF ¶ 7, ECF No. 49; Fairbrothers' Counter SMF ¶ 7, ECF No. 55-1.) The underlying Plaintiffs allege in their complaint that, after purchasing the home, they discovered rot and water damage in the house that created an environmental hazard. (Insurers' SMF ¶ 8, ECF No. 49; Fairbrothers' Counter SMF ¶ 8, ECF No. 55-1.) The underlying complaint contains four causes of action: (1)

breach of express contract; (2) breach of implied contract; (3) fraudulent inducement; and (4) negligence related to the preparation of the property condition disclosure statement and the Fairbrothers' failure to disclose rotten water damage in the structure of the house. (Insurers' SMF ¶¶ 9–12, ECF No. 49; Fairbrothers' Counter SMF ¶¶ 9–12, ECF No. 55-1.)

## II. The Policies

On January 10, 2017, after purchasing a new home in California, the Fairbrothers acquired a homeowners' insurance policy with Farmers Insurance Exchange and an umbrella policy issued by Truck Insurance Exchange (hereinafter the "Policies") and renewed both Policies in 2019. (Fairbrothers' SMF ¶ 16, ECF No. 55-2; Insurers' SMF ¶ 19, ECF No. 49; Fairbrothers' Counter SMF ¶ 19, ECF No. 55-1; Insurers' Counter SMF ¶ 16, ECF No. 59.)[3]

On November 24, 2020, the Fairbrothers filed a third-party complaint against the Insurers in which the Fairbrothers allege that on January 10, 2020, Farmers issued policy number 30104-58-38 to them. (Insurers' SMF ¶¶ 14, 19, ECF No. 49; Fairbrothers' Counter SMF ¶¶ 14, 19, ECF No. 55-1.) Farmers contends that the

---

[3] The parties have not clearly stated the exact dates of coverage and renewals in their statement of facts for either policy. While the Fairbrothers assert that they renewed both policies in 2019 (Fairbrothers' SMF ¶ 16, ECF No. 55-2) and the Insurers admit this fact (Insurers' Counter SMF ¶ 16, ECF No. 59), the disclaimer letter, dated December 13, 2020, provides that the Farmers' policy "was effective from January 10, 2017 to January 10, 2018 and was renewed on January 10, 2018 through January 10, 2021." (Letter from D. Ezra to M. and K. Fairbrother at 2, ECF No. 49-5.) In addition, the same letter provides that the Truck Insurance policy "was effective from April 19, 2017 to April 19, 2018. A modified version of the policy was effective from January 10, 2018 to April 19, 2018 and was renewed annually through April 19, 2021." (*Id.* at 7.) Despite the lack of clarity regarding the effective dates and renewals of the Policies, the Court will presume that both Policies were in effect related to the claims in the underlying action as no party has argued otherwise.

homeowners' policy covered property located at 33758 White Feather Road, Acton California. (Insurers' SMF ¶ 20, ECF No. 49.) The Fairbrothers contend that "[w]hile the homeowner's policy was written for 33758 White Feather Road, Acton, California 93510, the coverage afforded by Farmers' policy number 30104-58-38 was not limited to occurrences occurring at 33758 White Feather Road, Acton, California 93510." (Fairbrothers' Counter SMF ¶ 20, ECF No. 55-1.) The Fairbrothers obtained the policy through Farmers' agent, Damian White, located in Stevenson Ranch, California. (Insurers' SMF ¶ 21, ECF No. 49; Fairbrothers' Counter SMF ¶ 21, ECF No. 55-1.)

The third-party complaint further alleges that on April 19, 2020, Truck Insurance issued umbrella policy number 60596-15-95 to the Fairbrothers, which the Fairbrothers contend was for the policy period April 19, 2020, through April 19, 2021, and which the Fairbrothers allege covered them for damage caused by an occurrence in excess of the retained limit on their behalf. (Insurers' SMF ¶¶ 15, 22, ECF No. 49; Fairbrothers' Counter SMF ¶¶ 15, 22, ECF No. 55-1.) The Truck Insurance policy was also issued to Matt Fairbrother at his Acton, California address. (Insurers' SMF ¶ 22, ECF No. 49; Fairbrothers' Counter SMF ¶ 22, ECF No. 55-1.) Farmers' agent, Damien White, also issued this policy to the Fairbrothers. (Insurers' SMF ¶ 23, ECF No. 49; Fairbrothers' Counter SMF ¶ 23, ECF No. 55-1.)

The Farmers' policy defines an "occurrence" as

a. an accident which first occurs during the policy period, and which results in **bodily injury** or **property damage**. Repeated or continuous exposure to the same general harmful conditions is considered to be one **occurrence**; or

b. the commission of an offense which is first committed during the policy period and which results in **personal injury**. A series of similar or related offenses is considered to be one occurrence.

(Farmers' policy at 7, ECF No. 49-3.)[4]

The Farmers' policy defines "property damage" as "direct, distinct and demonstrable, physical injury to or destruction of tangible property, including loss of use resulting from the direct, distinct and demonstrable actual physical injury to or destruction of the property." (*Id.* at 7–8.) The policy further provides

"**Property damage** does not mean:

a. actual, threatened, feared, constructive or alleged diminution or loss of value or equity;

b. functional impairment or loss of use of property unless the property has sustained direct, distinct and demonstrable, physical injury or destruction; or

c. non-economic damages.

(*Id.* at 8.)

Under the Truck Insurance policy an "occurrence" means:

a. with regard to **bodily injury** or **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** during the **policy period**; or

b. with regard to **personal injury**, offenses committed during the **policy period**, even if the resulting injury takes place after the policy expires.

---

[4] The Insurers cite to "(Farmers' Policy, at 9)" in support of this statement. However, the Farmers' policy attached to the Insurers' statement of facts in support of their motion does not contain any such language on page 9. The Court's review of the policy revealed that the language can be found on page 4 of the policy. In fact, all of the cites to the Farmers' policy are incorrect in the Insurers' brief (ECF No. 48). If the Insurers are referring to a different version of the policy, it is not clear to the Court.

(Truck Insurance policy at 4, ECF No. 49-4.) The Truck Insurance policy defines "property damage" as follows:

    a.  physical injury to or destruction of tangible property. This includes all resulting loss of use caused by such physical injury or destruction. All such resultant loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to have occurred at the time of the **occurrence** that caused it.

(*Id.* at 5.)

The Fairbrothers contend that the Policies provided them with personal liability coverage for "**property damage** resulting from an **occurrence.**" (Fairbrothers' SMF ¶ 17, ECF No. 55-2 (emphasis in original).)[5] The Fairbrothers further contend that "[a]s part of the liability coverage provided under the Policies, Farmers was required to provide, at its own expense and with attorneys of its choosing, the Fairbrothers with a defense for any suit seeking damages covered under the personal liability section of the Policies." (Fairbrothers' SMF ¶ 18, ECF No. 55-2.) The Farmers' policy at page 34 provides:

    **Section II - Liability Coverage**
    We will insure you for the coverages as described below except as otherwise shown in the Declarations.
    **Coverage E (Personal Liability)**
    We will pay those damages which an insured becomes legally obligated to pay because of:
    1. **bodily injury** resulting from an **occurrence**; or
    2. **property damage** resulting from an **occurrence**.
    At our expense and with attorneys of our choice, we will defend an **insured** against any suit seeking damages covered by Coverage E (Personal Liability).

_____

[5] Plaintiff only cites to the Farmers' policy in support of this assertion. (*See*, Fairbrothers' SMF ¶ 17, ECF No. 55-2, citing to "M. Fairbrother Dclr., Ex. 5, p. 34 of 46.") Exhibit 5 is the Farmers' policy.

(Decl. of Matthew D. Fairbrother ("Fairbrother Decl.") Ex. 5 at 34 (Farmers' policy), Sept. 7, 2022, ECF No. 56.) The Fairbrothers further contend that "[u]nder terms of the Policies 'an insured will not, except at that insured's own cost, volunteer any payment, assume any obligation or incur any expense except First Aid Expenses.'" (Fairbrothers' SMF ¶ 20, ECF No. 55-2.) The Farmers' policy provides:

> **3. Duties After Loss.**
>
> In case of an **occurrence**, an **insured** must perform the following duties: . . .
> f. an **insured** will not, except at that **insured's** own cost, volunteer any payment, assume any obligation or incur any expense except First Aid Expenses.

(Fairbrother Decl., Ex. 5 at 41 (Farmers' policy), ECF No. 56.)

The Insurers disclaimed coverage under seven exclusions contained in the Farmers' policy. (Letter from D. Ezra to M. and K. Fairbrother at 3–7, ECF No. 49-5.) The Insurers also disclaimed coverage under seven exclusions contained in the Truck Insurance's policy. (*Id*. at 7–10).

## III. The Instant Action

The first cause of action in the third-party complaint alleges that the Farmers' policy should provide coverage under the personal liability provisions. (Insurers' SMF ¶ 16, ECF No. 49; Fairbrothers' Counter SMF ¶ 16, ECF No. 55-1.) The Complaint further alleges that under New York Insurance Law section 3420, Third-Party Defendants are estopped from disclaiming coverage. (Insurers' SMF ¶ 18, ECF No. 49; Fairbrothers' Counter SMF ¶ 18, ECF No. 55-1.)

The Fairbrothers provided Farmers with notice of claim on June 22, 2020, by forwarding a copy of the original complaint through Farmers' electronic reporting system, per Farmers' request. (Insurers' SMF ¶¶ 17, 26, ECF No. 49; Fairbrothers' Counter SMF ¶¶ 17, 26, ECF No. 55-1; Fairbrothers' SMF ¶ 27, ECF No. 55-2.) The Fairbrothers assert that after being provided with the complaint, Farmers initially incorrectly assigned the claim to a first-party claims adjuster. (Fairbrothers' SMF ¶ 28, ECF No. 55-2.) Farmers denies that anything was done incorrectly. (Insurers' Counter SMF ¶ 28, ECF No. 59.)

On June 25, 2022, Farmers' representative, Joseph Arsenault, contacted the Fairbrothers and requested that they provide him with photographs and permits relating to the construction of the Caledonia home. (Fairbrothers' SMF ¶ 29, ECF No. 55-2; Insurers' Counter SMF ¶ 29, ECF No. 59.) The Fairbrothers provided the information requested by Mr. Arsenault by June 30, 2020. (Fairbrothers' SMF ¶ 30, ECF No. 55-2; Insurers' Counter SMF ¶ 30, ECF No. 59.) The Fairbrothers contend that on June 25, 2022, the Fairbrothers advised Farmers that the claims against them included claims for negligent construction and negligent maintenance of the Caledonia home. (Fairbrothers' SMF ¶ 31, ECF No. 55-2.) The Insurers contend that the complaint does not contain any claims for negligent construction or maintenance. (Insurers' Counter SMF ¶ 31, ECF No. 59.) Farmers knew on June 25, 2020, that the answer to the complaint in the underlying *Nitto* action was due on August 1, 2020. (Fairbrothers' SMF ¶ 35, ECF No. 55-2; Insurers' Counter SMF ¶ 35, ECF No. 59.)

The Fairbrothers' claim was assigned to insurance adjuster, Holly Ashurex, who reviewed the lawsuit, took a recorded statement from the insured on June 30, 2020, regarding the claims made by the underlying Plaintiffs and also took a recorded statement from the Farmers' agent who sold the policy. (Insurers' SMF ¶ 27, ECF No. 49; Fairbrothers' Counter SMF ¶ 27, ECF No. 55-1; Fairbrothers' SMF ¶ 32, ECF No. 55-2; Insurers' Counter SMF ¶ 32, ECF No. 59.) During the June 30, 2020, conversation with with Matthew Fairbrother and his son-in-law, who is an attorney, Ms. Ashurex explained that there most likely is no coverage because there is an exclusion for sale and transfer of a home. (Insurers' SMF ¶ 34, ECF No. 49; Fairbrothers' Counter SMF ¶ 34, ECF No. 55-1.) She also advised Mr. Fairbrother to start looking for an attorney to represent him. (*Id*.) When asked about a timeframe, she indicated that counsel would review the coverage issue first, and so she could not give a definite timeframe. (*Id*.) The Fairbrothers contend that after June 30, 2020, Farmers requested no further information from them and performed no further investigation of the claims made by the underlying Plaintiffs. (Fairbrothers' SMF ¶¶ 33, 34, ECF No. 55-2.) The Insurers deny this representation citing to pages 63 and 80 of the claims notes.[6] (Insurers' Counter SMF ¶ 33, ECF No. 59.) The Insurers

---

[6] With respect to the Insurers' denials in which they simply cite to documents, the Court understands that the Insurers are denying the Fairbrothers' representations but the Insurers have not provided any explanation in their statement of facts to enable the Court to understand the basis for the denial and it is not the duty of the Court to sift through the cited documents to try to glean that basis.

indicate that the matter was sent for a coverage opinion and citing to pages 4, 63, and 80 of the claims notes.[7] (Insurers' Counter SMF ¶ 34, ECF No. 59.)

The Insurers contend that a referral was made for an internal coverage decision on July 27, 2020, because it was a California policy with a claim for a New York loss. (Insurers' SMF ¶¶ 28, 35, ECF No. 49.) The Fairbrothers deny this assertion and point to their response to paragraph 38 of their Rule 56.1 Counterstatement of Material Facts, which, in sum and substance, challenges whether a referral occurred for an internal coverage decision. (Fairbrothers' Counter SMF ¶¶ 28, 34, ECF No. 55-1.)

The Fairbrothers contend that

> According to the testimony of James Peoples, while he believed that Ms. Ashurex filled out referral form, he was not sure that Ms. Ashurex contacted anyone and while there is testimony that it was the usual practice to forward referrals, there is no testimony that the referral was in fact forwarded. [Dkt # 49-6, pp. 35-37] Rather, Mr. Peoples testified that while he would normally be responsible for forwarding the referral, he was on vacation at the time he believed that the referral form was completed and that he had no independent recollection of what he did with the referral form once he received it. [Dkt # 49-6, p. 37] Further, Mr. Peoples was unable to find the actual referral form in the file that he reviewed in preparation for his testimony. [Dkt # 49-6, p.36] When specifically asked whether the referral form was forwarded for an internal coverage decision, Mr. Peoples testified "I don't know. And I didn't see any file notes that would answer that question." [Dkt # 49-6, p. 37].

(Fairbrothers' Counter SMF ¶ 28.) The Insurers assert that in response to the referral for an internal coverage claim, it was recommended that the claim be sent to outside counsel for a coverage opinion. (Insurers' SMF ¶ 29.) The Fairbrothers contend that

---

[7] *See* footnote 6, above.

Mr. Peoples did not testify that there was in fact a recommendation to send the case to outside counsel for a coverage opinion, but instead testified that was the normal practice. (Fairbrothers' Counter SMF ¶ 29.)

The claim was sent to outside counsel for a coverage opinion on August 10, 2020. (Insurers' SMF ¶ 30, ECF No. 49; Fairbrothers' Counter SMF ¶ 30, ECF No. 55-1.)

On September 4, 2020, Ms. Ashurex e-mailed Mr. Fairbrother and noted that Dave Ezra, outside counsel, was still working on the coverage investigation, and requested names of the insured's attorney. (Insurers' SMF ¶ 31, ECF No. 49; Fairbrothers' Counter SMF ¶ 31, ECF No. 55-1.) On November 11, 2020, Ms. Ashurex's notes indicate that she spoke with the Fairbrothers' counsel and informed him that she was 95% certain there would not be coverage. (Insurers' SMF ¶ 36, ECF No. 49; Fairbrothers' Counter SMF ¶ 36, ECF No. 55-1.) On November 26, 2020, the matter was discussed with a Zone Manager. (Insurers' SMF ¶ 32, ECF No. 49; Fairbrothers' Counter SMF ¶ 32, ECF No. 55-1.) On December 9, 2020, a note in the claims file indicates that authority was given to disclaim coverage under both Policies and to advise coverage counsel to send out a letter to that effect. (Insurers' SMF ¶ 33, ECF No. 49; Fairbrothers' Counter SMF ¶ 33, ECF No. 55-1.)

On December 13, 2020, the Insurers' counsel issued a Coverage Disclaimer Letter, which provided several reasons why the claim was not covered under either of the Policies. (Insurers' SMF ¶¶ 24–25, ECF No. 49; Fairbrothers' Counter SMF ¶¶ 24–25, ECF No. 55-1.)

The Fairbrothers contend that despite being aware of the claim since June 22, 2020, knowing that an answer was due by August 1, 2020, and not conducting any further investigation after June 30, 2020, Farmers did not begin its process to determine coverage until at least August 10, 2020, when Ms. Ashurex first sought coverage review. (Fairbrothers' SMF ¶ 36, ECF No. 55-2.) The Insurers deny this representation, indicating that on July 27, 2020, a referral was made for an internal coverage decision, that on June 30, 2020, the adjuster had a discussion with the Mr. Fairbrother and his son-in-law, who is an attorney, and explained to him that there most likely is no coverage because there is an exclusion for the sale and transfer of a home, and that the claim was sent to outside counsel for a coverage opinion on August 10, 2020. (Insurers' Counter SMF ¶ 36, ECF No. 59.)

The Fairbrothers assert that Farmers has provided no explanation as to why it delayed from June 30, 2020, to August 10, 2020, to seek a coverage review. (Fairbrothers' SMF ¶ 37, ECF No. 55-2.) The Fairbrothers further contend that Farmers provided no information as to why it took coverage counsel more than five months to make a determination as to whether there was coverage, despite the fact that no further investigation was undertaken and all of the information relied on by counsel in its disclaimer letter dated December 13, 2020, was information that Farmers had no later than June 30, 2020. (Fairbrothers' SMF ¶ 38, ECF No. 55-2.) More than 40 days expired between June 22, 2020, when Farmers was provided notice of the claim, and December 13, 2020, when Farmers denied coverage. (Fairbrothers'

SMF ¶ 38, ECF No. 55-2.) The Insurers admit that this fact but add that the coverage issue was being determined. (Insurers' Counter SMF, ¶ 39, ECF No. 59.)

The Insurers also deny the Fairbrothers' statement of facts contained in paragraphs 33, 37, 38, and 39. (Insurers' Counter SMF, ECF No. 59).[8] Again, however, the Insurers only cite to documents, thereby failing to provide the Court with any bases for the denials.

## DISCUSSION

### *Standards of Law*

#### *Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586–87) (emphasis in

---

[8] *See* footnote 6, above.

original). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

### *Choice of Law.*

A federal court sitting in diversity applies state substantive law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply stale substantive law and federal procedural law"). Here, applying the choice-of-law rules of New York, the Court has determined that California law applies. The parties do not dispute that California law applies to all claims relevant to the present action.[9]

### *Duty to Defend.*

"To prevail in an action seeking declaratory relief on the question of the duty to defend, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 222 (2018), *as modified* (July 25, 2018) (internal quotations and citation omitted) (emphasis in original).

A liability insurer has a duty to defend its insured under California law if facts alleged in the complaint, or other facts known to the insurer, potentially could give

---

[9] In their reply memorandum of law the Fairbrothers contend that New York law applies to determine whether a claim for negligent construction and/or maintenance constitutes an occurrence under the Policies. But, as explained on page 26, *infra*, the Fairbrothers have waived this argument.

rise to coverage under the policy. *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654–55 (2005) ("that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability."); *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275–77 (1966) ("[C]ourts do not examine only the pleaded word but the potential liability created by the suit . . . . An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy."). The facts need only "raise the possibility" that the insured will be held liable for covered damages. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 299–300.

A duty to defend arises under California law upon the tender to the insurer of a potentially covered claim and continues until the conclusion of the lawsuit or until the insurer shows that facts extrinsic to the third-party complaint conclusively negate the potential for coverage. *Scottsdale,* 36 Cal. 4th at 655; *Montrose,* 6 Cal. 4th at 298–300. If a duty to defend arises, the insurer must defend the action in its entirety, including claims that are not potentially covered. *Buss v. Superior Ct.,* 16 Cal. 4th 35, 48–49 (1997). If a duty to defend has arisen by virtue of the existence of a potential for coverage but is later extinguished, it is extinguished prospectively only, and not retroactively. *Id.* at 46.

19

The Insurers contend that they can demonstrate as a matter of law that there is no possible legal or factual basis under which they will be obligated to defend or indemnify the Fairbrothers based upon the claims in the *Nitto* action. The Insurers specifically assert that the Farmers' policy provides "coverage for certain damages you become legally obligated to pay because of bodily injury or property damage resulting from an occurrence." (Insurers' Mem. of Law at 10, ECF No. 48 and Insurers' SMF Ex. C (Farmers' policy) at 4, ECF No. 49-3.) They further contend that both Policies define an occurrence as an "accident" that occurs during the policy period and that the claims asserted in the *Nitto* action involve intentional conduct. (Insurers' Mem. of Law at 10–11, 12 ECF No. 48.) Accordingly, the Insurers conclude that there is no coverage under the Policies. In addition, the Insurers argue that exclusions contained in the Policies preclude coverage.

The Fairbrothers, in turn, contend that they can establish as a matter of law that the facts in the *Nitto* complaint allege that the Fairbrothers were negligent in the construction and/or maintenance of the geodesic dome, which they conduct constitutes an "occurrence" under the policies, thus triggering coverage. (Fairbrothers' Resp. Mem. of Law 3, 8–9, ECF No. 55-10.) The Fairbrothers further assert that none of the exclusions raised by the Insurers to preclude coverage apply. (*Id*. at 3.) Finally, they argue that even if any of the exclusions could apply, the Insurers are estopped from disclaiming coverage because they violated California's claims practices regulations. (*Id*.)

The interpretation of an insurance policy corresponds to the interpretation of contracts generally. The parties' mutual intention when they form the contract governs interpretation; "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Superior Court* 2 Cal. 4th 1254, 1264 (1992). Indeed, "if possible, [the court] infer[s] this intent solely from the written provisions of the insurance policy [and] [i]f the policy language is clear and explicit, it governs." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citation omitted). The court is also required to interpret these terms in context and give effect to every part of the policy. *Id.* (citations and internal quotations omitted).

A policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998). The court may then "invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal. 4th 27, 37–38 (1994).

To resolve the parties' competing motions for summary judgement, the Court must determine whether the damages alleged in the *Nitto* action constitute "property damage" caused by an "occurrence" as those terms are defined in the policies. If that analysis results in a finding that the damages satisfy the definitions, the Court must then determine whether any exclusion applies to preclude coverage.

### A. The Nitto complaint can be read to assert liability against the Fairbrothers for negligent construction and/or maintenance.

The parties fundamentally disagree as to whether the *Nitto* complaint contains potential liability to the Fairbrothers for negligent construction and/or maintenance. As explained under the "Duty to Defend" section, *supra*, to determine if there is a duty on behalf of the insurer the Court can look beyond the technical legal causes of action contained in a complaint to determine if the facts of the complaint can provide any potential liability for the insurer that could be covered. Indeed,

> Since pleadings are easily amended, the proper focus is on the facts alleged, rather than the theories for recovery. [Citation.] However, the insured "'may not speculate about unpled third party claims to manufacture coverage'" [citation], and the insurer has no duty to defend where the potential for liability is "'tenuous and farfetched.'" [Citation.] The ultimate question is whether the facts alleged 'fairly apprise' the insurer that the suit is upon a covered claim.

*Gonzalez v. Fire Ins. Exch.*, 234 Cal. App. 4th 1220, 1230 (2015) (citations omitted).

The Insurers assert that the *Nitto* complaint "does not contain a claim for negligent maintenance or construction. These were simply background facts asserted in the [*Nitto* complaint] and they do not provide a basis for a defense or indemnity under the subject policies." (Insurers' Resp. Mem. of Law at 2, ECF No. 60.)

The Court agrees with the Fairbrothers, however, that the underlying facts of the *Nitto* complaint can be read to create potential for liability for negligent construction and/or maintenance. Specifically, paragraphs 10 and 11 of the *Nitto* complaint provide as follows:

> 10. Upon information and belief, the defendants Fairbrother knew, or had reason to know at the time they constructed the House, that a failure to allow for and/or maintain adequate ventilation in the area of the geodesic roof and

cupola could result in damage to the structural components of the House from the build-up of moisture and water in that area, including deterioration and rot to structural components of the House.

11. Upon information and belief, the defendants Fairbrother did not take adequate care in the construction and maintenance of the House to assure proper and adequate ventilation in the area of the geodesic roof and cupola.

(Insurers' SMF Ex. A at 2–3, ECF No. 49-1.) Thus, while it is undisputed that the *Nitto* complaint does not contain any formal causes of action for negligent construction and/or maintenance, facts supporting such claims can be gleaned from the complaint.

### B. The Fairbrothers have failed to demonstrate that a claim for negligent construction/maintenance constitutes an "occurrence" under the Policies.

As the Policies define an "occurrence" as an "accident" it is imperative to understand what type of actions constitute an "accident." Under California law and "[i]n the context of liability insurance, an accident is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Delgado v. Interinsurance Exch. of Auto. Club of S. California*, 47 Cal. 4th 302, 308 (2009) (internal quotations and citations omitted). "[T]he term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence (Black's Law Dict. [(5th ed. 1979)] at p. 14, col. 2) . . . ." *Safeco Ins. Co. of America v. Robert S.*, 26 Cal. 4th 758, 765 (2001). "[A]ny kind of fortuitous event may be considered an 'accident.' The legal elements of the tort of negligence delineate a narrower set of circumstances." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 221, n.3 (2018).

An accident does not occur "when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Merced Mutual Ins. Co. v. Mendez,* 213 Cal. App. 3d 41, 51 (1989). *Merced* explains the distinction by the following illustration: When a driver intentionally speeds and as a result, negligently hits another car, the speeding is an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. This situation is distinct from an instance where a driver speeds and deliberately hits the other car. *Id.* at 50.

The named causes of action in the *Nitto* complaint for breach of express contract, breach of implied contract, and fraudulent inducement allege intentional violations of the Fairbrothers' legal obligations. Since these causes of action cannot create liability that would result from an accidental loss, there is no coverage as to these claims as a matter of law. It also appears that the fourth cause of action for "negligence" is a claim for negligent misrepresentation. Under California law, no contractual agreement may indemnify anyone from his own fraud. Cal. Civ. Code § 1668. Negligent misrepresentation falls within the definition of fraud. *Blankenheim v. E.F. Hutton,* 217 Cal. App. 3d 1463, 1472–73 (1990). Therefore, there can be no insurance coverage for the fourth cause of action in the *Nitto* complaint as a matter of law. The Fairbrothers do not appear to dispute either the Insurers' assertion that the fourth cause of action in the *Nitto* complaint can be construed as a claim for

24

negligent misrepresentation, nor that such a claim would not be covered under the Policies.

Regardless, the Court does not believe that the Fairbrothers have met their burden of establishing that there was an "occurrence" as defined under the Policies to trigger the Insurers' duty to defend. In their memorandum in response to the Insurers' motion and in support of their cross-motion, the Fairbrothers assert that a claim for negligent construction is an "occurrence" under the Policies. (Fairbrothers' Resp. Mem. of Law at 9, ECF No. 55-10.) However, the sole case relied upon by the Fairbrothers in support of this assertion, *Baugh Construction Company v. Mission Insurance Company*, 836 F.2d 1164 (9th Cir. 1978), is inapplicable here because it was decided under Washington State law.

The Fairbrothers also assert that a claim for negligent construction is an "occurrence" under the Policies, citing to *Insurance Company of North America v. Sam Harris Construction Company*, 22 Cal. 3d 409, 412 (1978). (*Id.*) The *Sam Harris* case involved a liability insurance policy that provided coverage for "occurrences or accidents . . . during the policy period." *Sam Harris*, 22 Cal. 3d at 412. However, neither the word "occurrences" nor "accidents" was defined in the policy at issue in that case. The court determined that, lacking such definitions, the ambiguity as to the meaning of those words should be resolved against the insurer and that "the language will be understood in its most inclusive sense, for the benefit of the insured." *Id*. at 412–413. The court held that negligent maintenance constituted an "occurrence" under the insurance liability policy at issue. The *Sam Harris* case does

not aid the Court because it is impossible to make a comparison between that case, where there was no definition of the word "occurrence" and this case, where it is defined in the Policies.

In their reply brief, the Fairbrothers contend, for the first time, that New York law should apply in determining whether negligent construction/maintenance are occurrences under the Policies. (Fairbrother's Reply at 4, ECF No. 62.) However, case law supports a finding that the Fairbrothers have waived this argument because they raised it for the first time in their reply brief. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 169 (2d Cir. 2006), *cert. denied* 549 U.S. 953 (2006) ("The first time the issue of legislative immunity is raised is in plaintiff's reply brief. As such, the issue is not properly before us, because we deem it waived."); *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 19-CV-00179 (LJL), 2022 WL 10653757, at *14 (S.D.N.Y. Oct. 18, 2022); *Parnass v. Brit. Airways, PLC*, No. 1:19-CV-04555 (MKV), 2021 WL 4311342, at *7 (S.D.N.Y. Sept. 21, 2021); *Ocean Partners, LLC v. N. River Ins. Co.*, 546 F. Supp. 2d 101, 106 (S.D.N.Y. 2008).

However, even if the Fairbrothers had not waived this argument, the case of *Marrero v. Marisco*, 218 A.D.2d 226 (3d Dep't 1996) cited by them does not support their argument that negligent construction and/or maintenance constitutes an "occurrence" under the Policies. *Marrero* is distinguishable because it involved a professional contractor. In that case, the contractor, Mar-Feld Building Corporation, constructed a house on a property adjacent to the plaintiffs' property, which subsequently caused water to run onto the plaintiffs' property, including their

Case 6:20-cv-06660-MJP   Document 67   Filed 02/21/23   Page 27 of 31

driveway. *Id*. at 228. One of the plaintiffs slipped on ice that had formed due to the accumulated water in the driveway and sustained injuries. *Id*. The Third Department held that Mar-Feld's conveyance of the property prior to the plaintiff's fall did not "relieve it of its independent liability for creating the dangerous condition during the construction work." *Id*. at 229.

The Third Department later clarified its decision in *Marrero* as follows:

> the analysis described in *Marrero* is narrow. It applies only when a former owner who is also acting as a construction contractor is alleged to have affirmatively created a dangerous condition (*see Marrero v. Marsico*, 218 A.D.2d at 229, 639 N.Y.S.2d 183). In such cases, the former owner's liability is not based upon its ownership, possession or control of property, but, rather, upon the "modern rule" that holds building and construction contractors whose negligence results in the creation of a dangerous condition [ ] liable for foreseeable injuries to third parties, even after the property owner has accepted the work.

*Scheffield v. Vestal Parkway Plaza, LLC*, 139 A.D.3d 1161, 1163 (3d Dep't 2016).

Here, there is no allegation by the Fairbrothers in the third-party complaint or any other sworn document that they were "building or construction contractors" such that the application of the "modern rule" would apply. Instead, Matthew Fairbrother provides in his declaration as follows:

> 4. In 1982, my wife and I broke ground for our home located at 642 Sylvan Court in Caledonia, New York.

> 5. After the foundation and the walls of the structure were complete, I assembled a geodesic dome from a kit that I had ordered.

> 6. Once completed, I, together with my father-in-law installed the dome on the house.

(Decl. of M. Fairbrother at ¶¶ 4–6, ECF No. 56.) Accordingly, *Marrero* does not support the Fairbrothers' assertion that a claim for negligent construction and/or maintenance constitutes an "occurrence" under the Policies.

In the alternative, the Fairbrothers contend that if California law applies negligent construction and/or maintenance constitutes an "occurrence" under the Policies. (Fairbrothers' Reply at 5, ECF No. 62.) Specifically, the Fairbrothers cite to two California cases, which they argue support their assertion that there was an occurrence sufficient to trigger the Insurers' duty to defend. However, a review of those cases does not support this conclusion.

The Fairbrothers cite to *Whitney v. Raab*, No. B158636, 2003 WL 21214143 (Cal. Ct. App. May 27, 2003). In that case, the Raabs owned an apartment building. *Id.* at *1. When the building's water heater broke, a tenant hired a plumber to fix it. *Id.* Unbeknownst to the tenant, the plumber was not licensed and the plumber (and the Raabs) failed to obtain a permit or secure a city inspection of the new water heater. *Id.* There was no mechanism preventing tenants from turning the water heater up to its hottest setting or to prevent the water heater from providing overheated water. *Id.* The Raabs later sold the property to The Bowers Family Trust. Several years later, a three-year-old suffered serious burns when she fell into a bathtub full of hot water. *Id.* The child's parents commenced an action against several defendants, including the Raabs and the Bowers. In reversing the lower court's grant of summary judgment to the Raabs, the court indicated, in part, that

> Contrary to the trial court's conclusion, the fact that someone adjusted the temperature control valve on the water heater after the Raabs sold the property, if true, would not relieve the Raabs of liability for failing to exercise reasonable care to protect persons from a foreseeable risk of injury arising from a condition that existed when the Raabs were in possession and that they failed to disclose to the subsequent owner.

*Whitney v. Raab*, No. B158636, 2003 WL 21214143, at *1 (Cal. Ct. App. May 27, 2003).

In discussing the *Whitney* case in their reply memorandum, the Fairbrothers gleaned the following:

> In *Whitney*, the Court found the plaintiffs' claims survived the transfer of the property, holding that a seller retains potential liability for a defect on the property when "[t]he buyer does not know of the condition or the risk involved therein, and, (b) [t]he seller knows of the conditions and the risk involved therein and has reason to believe that the buyer will not discover the condition or realize the risk." Id., at *4.

(Fairbrothers' Reply at 6, ECF No. 62.)

The Fairbrothers then analogize their case to *Whitney* as follows:

> Applying the law set forth in *Whitney* to the facts here, the Fairbrothers have established the potential for a viable claim for negligent construction/maintenance, since it is alleged that the Fairbrothers created the allegedly defective condition and/or they knew or should have known of the defective condition and concealed it from the purchasers. Therefore, Farmers must provide them with a defense in the underlying matter.

(*Id.*) In reviewing the forgoing, it appears the Fairbrothers are arguing, in part, that intentional conduct should trigger the Insurers' duty to defend. However, the Policies both clearly define the term "occurrence" as an "accident." Regardless, while this case may suggest that the Fairbrothers have potential liability under the allegations of the *Nitto* complaint, its reliance on the *Whitney* case does not demonstrate that a claim for negligent construction and/or maintenance constitutes an "occurrence"

under the Policies. For this reason, the Court finds the Fairbrothers' reliance on the *Whitney* case, and its analogy thereto, unavailing.

The Fairbrothers also cite to *Kojoklyan v. Lee*, No. B285485, 2018 WL 2455677 (Cal. Ct. App. June 1, 2018), *as modified* (June 28, 2018) to demonstrate that the allegations contained in the *Nitto* complaint can be read to support potential claims for negligent construction and/or maintenance because the Fairbrothers either created the defective condition or knew about it and concealed it. (Fairbrothers' Reply at 7, ECF No. 7.) In addition, the Fairbrothers cite to the *Kojoklyan* case to demonstrate that the underlying Plaintiffs can bring a claim against them for negligent construction and/or maintenance even if there is no privity of contract between the two parties because "whether a contract existed between them for the construction of the roof plays no role in determining whether a claim for negligent construction/maintenance can be maintained." *Id.* Again, however, as with the *Whitney* case, *Kojoklyan* does not demonstrate that a claim for negligent construction and/or maintenance falls under the definition of "occurrence" in the Policies.

In sum, the Fairbrothers contend that having liability as a former landowner equals an occurrence under the Policies. However, they have not cited to any case law supporting this proposition. Accordingly, the Court finds that the Fairbrothers have failed to carry their burden of demonstrating an "occurrence" under the Policies and that, therefore, the Insurers have a duty to defend them in the *Nitto* action. Because the Court has reached this conclusion, it need not consider the Insurers' arguments regarding the application of any policy exclusions, nor need it consider the

Fairbrothers' contentions that the Insurers were estopped from invoking any exclusions due to an alleged failure to comply with California's Fair Claims Settlement Practices Regulations.

**C. No duty to indemnify.**

The Supreme Court of California has provided that the purpose of the duty to defend is "to avoid or at least minimize liability . . . *before* liability is established," whereas the purpose of the duty to indemnify is "to resolve liability . . . *after* liability is established." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001) (citation omitted) (emphasis in original). It is well established that "where there is no duty to defend, there *cannot be* a duty to indemnify." *Id.* (emphasis in original).

Since the Court has determined that the Insurers do not have a duty to provide a defense to the Fairbrothers in connection with the *Nitto* action, it follows that they are also relieved of any duty to indemnify the Fairbrothers in connection with that action.

**CONCLUSION**

For the foregoing reasons, the Court grants the Insurers' motion for summary judgment (ECF No. 50) and, further, denies the Fairbrothers' motion for summary judgment. (ECF No. 55).

**SO ORDERED**.

DATED:      February 21, 2023
            Rochester, New York

MARK W. PEDERSEN
United States Magistrate Judge